UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| EAGLE SPE NV I, INC., | ) | |
| Plaintiff, | ) ) ) | 3:12-cv-00245-RCJ-WGC |
| vs. | ) ) | |
| KILEY RANCH COMMUNITIES et al., | ) ) | **ORDER** |
| Defendants. | ) ) | |

This case arises out of four commercial loans and related guaranties. Pending before the Court are two motions to dismiss counterclaims and affirmative defenses, as well as a motion to stay or, in the alternative, certify a question to the Nevada Supreme Court. For the reasons given herein, the Court grants the motion to stay and denies the motions to dismiss without prejudice.

## I.     FACTS AND PROCEDURAL HISTORY

Between April 2007 and February 2008, non-party Colonial Bank gave Defendant Kiley Ranch Communities ("Kiley Ranch") four loans totaling $45 million (the "Loans") in order to build Kiley Ranch North (the "Property") in Sparks, Nevada. (*See* Am. Compl. ¶¶ 14, June 7, 2012, ECF No. 5). Each of the Loans was made via its own promissory note and secured by a common deed of trust against the Property. (*Id.* ¶ 15). Each of the Loans was further secured by its own guaranty, signed by Defendants Matthew N. Kiley, individually and as trustee of the Matthew N. Kiley Trust; Megan L. Kiley, individually and as trustee of the Megan L. Kiley

1  Trust; L. David Kiley, as trustee of the Matthew N. Kiley Trust and as trustee of the Megan L.
2  Kiley Trust; and Michael and Kellee Kiley, both individually and as trustees of the Michael P.
3  Kiley and Kellee Kiley Living Trust Instrument (collectively, "Guarantors"). (*See id.* ¶¶ 4–9,
4  16).[1]

5      Repayment on each of the Loans was originally due within one year, but Colonial Bank
6  granted Kiley Ranch three extensions on the $20 million, $2 million, and $13 million loans and
7  one extension on the $10 million loan via separate loan modifications. (*Id.* ¶ 17).[2] When the last
8  of the Loans matured on July 20, 2009, Kiley Ranch owed Colonial Bank $41,023,667.99 under
9  the loans. (*Id.* ¶ 18).

10     On August 14, 2009, the FDIC put Colonial Bank into receivership after the State
11 Banking Department of the State of Alabama closed the bank. (*Id.* ¶ 21). The FDIC transferred
12 the rights to the Loans to non-party BB&T the same day, recording an Assignment of Security
13 Instruments, Notes and Other Loan Documents (the "FDIC Assignment") in Washoe County.
14 (*Id.* ¶ 22).[3]

15     On September 14, 2009, counsel for BB&T sent Kiley Ranch and Guarantors demand
16 letters as to each of the loans. (*Id.* ¶ 19).[4] On March 2, 2010, after Kiley Ranch and Guarantors
17 refused to honor the Notes and Guaranties, BB&T executed a Notice of Default and Election to
18 Sell (the "NOD"), which it recorded in Washoe County on March 4, 2010. (*Id.* ¶¶ 24–25).[5] On

---

[1]The Loan Agreements are adduced as Exhibits 1–4 to the Amended Complaint ("AC"); the promissory notes (the "Notes") are adduced as Exhibits 5–8; the deed of trust (the "DOT") and modifications thereto are adduced as Exhibits 9–11; and the Guaranties are adduced as Exhibits 12–15.

[2]The Loan Modifications are adduced as Exhibits 16–25 to the AC.

[3]The FDIC Assignment is adduced as Exhibit 30 to the AC.

[4]The Demand Letters are adduced as Exhibits 26–29 of the AC.

[5]The NOD is adduced as Exhibit 31 to the AC.

July 15, 2010, the trustee under the DOT, non-party Western Title Co., noticed a trustee's sale for August 12, 2010 via a Notice of Trustee's Sale (the "NOS"). (*Id.* ¶ 26).[6] Before the trustee's sale, however, BB&T assigned its rights to the Notes, DOT, Guaranties, and other loan documents to Plaintiff Eagle SPE NV I, Inc. ("Eagle") via an Assignment of Deed of Trust (the "BB&T Assignment"), which it recorded in Washoe County. (*Id.* ¶ 27).[7] The Property was eventually sold to a non-party via trustee's sale on November 8, 2011 for $9.8 million. (*Id.* ¶ 28).[8] The fair market value of the Property on the date of the trustee's sale was approximately $10.5 million. (*Id.* ¶ 30). The trustee's sale left a deficiency of approximately $35,682.908.60. (*Id.* 31).

Plaintiff sued Defendants in this Court on three causes of action: (1) Deficiency (against Kiley Ranch); (2) Breach of Guaranty (against Guarantors); and (3) Breach of the Implied Covenant of Good Faith and Fair Dealing (against Guarantors). Defendants included with their Answer a Counterclaim listing four causes of action: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Intentional Interference with Prospective Economic Advantage; and (4) Declaratory Judgment.

Plaintiff has moved to dismiss certain counterclaims and affirmative defenses as precluded by a finally adjudicated Nevada state court breach of contract lawsuit Kiley Ranch brought against BB&T in which the state court granted summary judgment to BB&T that Colonial Bank had not breached the Loan Agreements when it refused to grant Kiley Ranch's final two disbursement requests. Plaintiff has also moved to dismiss Defendants' affirmative defense and counterclaim under Assembly Bill 273 ("AB 273") because AB 273 does not apply retroactively to the Loans. Defendants have asked the Court to certify the latter issue to the

---

[6] The NOS is adduced as Exhibit 32 to the AC.

[7] The BB&T Assignment is adduced as Exhibit 33 to the AC.

[8] The Trustee's Deed is adduced as Exhibit 34 to the AC.

1   Nevada Supreme Court or at least stay the case until the Nevada Supreme Court rules in two

2   pending consolidated appeals that are expected to determine the issue.[9]

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the

---

[9]Consolidated oral arguments in the cases, *Sandpointe Apartments, LLC v. Dist. Ct.*, No. 59507 and *Nielsen v. Dist. Ct.*, No. 59823, were held on October 1, 2012 and the case submitted.

complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

## III.   ANALYSIS

The Court will first address the applicability to the present case of Nevada Revised Statutes ("NRS") section 40.459(1)(c). That section was added to the NRS by § 5 of AB 273. Prior to AB 273, the statute read:

> After the hearing, the court shall award a money judgment against the debtor, guarantor or surety who is personally liable for the debt. The court shall not render judgment for more than:
>
> 1. The amount by which the amount of the indebtedness which was secured exceeds the fair market value of the property sold at the time of the sale, with interest from the date of the sale; or
>
> 2. The amount which is the difference between the amount for which the property was actually sold and the amount of the indebtedness which was secured, with interest from the date of sale,
>
> whichever is the lesser amount.

Nev. Rev. Stat. § 40.459(1)–(2) (2009). AB 273 changed the statute to read:

> 1. After the hearing, the court shall award a money judgment against the debtor, guarantor or surety who is personally liable for the debt. The court shall not render judgment for more than:

> (a) The amount by which the amount of the indebtedness which was secured exceeds the fair market value of the property sold at the time of the sale, with interest from the date of the sale;
>
> (b) The amount which is the difference between the amount for which the property was actually sold and the amount of the indebtedness which was secured, with interest from the date of sale; or
>
> (c) If the person seeking the judgment acquired the right to obtain the judgment from a person who previously held that right, the amount by which the amount of the consideration paid for that right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold, whichever is greater, with interest from the date of sale and reasonable costs,
>
> whichever is the lesser amount.

Nev. Rev. Stat. § 40.459(1)(a)–(c) (2011). Defendants argue that subsection (c) applies to limit the deficiency that can be obtained here, because Plaintiff obtained the Loans from BB&T. The application of the amendment would appear to limit any deficiency judgment Plaintiff could receive in the present case to the greater of: (1) the price Plaintiff paid BB&T for the Loans minus the fair market value of the Property on the sale date ($10.5 million); and (2) the price Plaintiff paid BB&T for the Loans minus the sale price ($9.8 million).

In other words, the Legislature has determined that a subsequent beneficiary of a loan secured by real property cannot fairly be said to have any "deficiency" beyond his own losses. The original lender may take a great loss when it sells a loan to a subsequent beneficiary, but the subsequent beneficiary itself suffers no loss so long as a debtor (or guarantor) makes good the difference between the price obtained at the trustee's sale and the amount the subsequent beneficiary actually paid for the loan. The potential retroactivity of the legislation is controversial because a subsequent beneficiary relies upon his historical right to obtain a deficiency based upon the amount of the original loan when he decides to purchase a defaulted loan. Most such purchasers purchase many defaulted loans knowing that collection of a deficiency against many of them will not ultimately be successful. The only thing making the practice profitable in many cases is the fact that in some cases the purchaser will obtain a

deficiency judgment in excess of its own investment, i.e., based upon the original loan amount, not upon the discounted price at which it purchased the loan from the previous beneficiary.[10] The surplus obtained in such cases can, if properly assessed, offset the losses incurred in those cases where little or no recovery is obtained, making the practice profitable overall.  Although it is clear that retroactive application of the new limitation could prejudice purchasers of defaulted loans who relied on their previous right to a "full" deficiency when calculating the value of their purchases of defaulted loans, the question is whether and how the Legislature intended to make AB 273 retroactive as to the deficiency provision.  Those issues are before the Nevada Supreme Court, and that Court's rulings may be dispositive to the pending claims and counterclaims.  The Court will not rule until the Nevada Supreme Court issues its opinions.  Although the Court agrees with Plaintiff's argument in response that the retroactivity issue will not necessarily be dispositive of all issues in the case, the Court prefers to have those rulings before proceeding.

## CONCLUSION

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 29, 30) are DENIED without prejudice.

IT IS FURTHER ORDERED that the Motion to Stay or Certify (ECF No. 39) is GRANTED IN PART.  The case is STAYED until the Nevada Supreme Court rules in *Sandpointe Apartments, LLC v. Dist. Ct.*, No. 59507 and *Nielsen v. Dist. Ct.*, No. 59823.

IT IS SO ORDERED.

Dated this 25th day of April, 2013.

_____
ROBERT C. JONES
United States District Judge

---

[10]The practice is similar to the practice of debt collectors generally and analogous to the practice of personal injury attorneys who use contingency fees that can result in fees far beyond the actual value of the labor performed in a given case in order to offset the losses incurred in the many cases that are unsuccessful and result in no fees.