1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8

EAGLE SPE NV I, INC.,                                    )
                                                         )
9                            Plaintiff,                   )
                                                         )
10            vs.                                         )          2:12-cv-00245-RCJ-WGC
                                                         )
11    KILEY RANCH COMMUNITIES et al.,                    )          **ORDER**
                                                         )
12                           Defendants.                 )
                                                         )
13    _____          )

14          This case arises out of the default of four commercial loans.  Pending before the Court is

15    a Motion to Dismiss (ECF No. 69).  For the reasons given herein, the Court denies the motion.

16    **I.       FACTS AND PROCEDURAL HISTORY**

17          Between April 2007 and February 2008, non-party Colonial Bank gave Defendant Kiley

18    Ranch Communities ("Kiley Ranch") four loans totaling $45 million (the "Loans") in order to

19    build Kiley Ranch North (the "Development") in Sparks, Nevada. (*See* Am. Compl. ¶ 14, June 7,

20    2012, ECF No. 5).  Each of the Loans was made via its own promissory note and was secured by

21    a Common Deed of Trust (the "CDOT") against the Development. (*Id.* ¶ 15).  The Loans were

22    further secured by separate guaranties (the "Guaranties"), all of which were signed by Defendants

23    Matthew N. Kiley, individually and as trustee of the Matthew N. Kiley Trust; Megan L. Kiley,

24    individually and as trustee of the Megan L. Kiley Trust; L. David Kiley, as trustee of the

25    Matthew N. Kiley Trust and as trustee of the Megan L. Kiley Trust; and Michael and Kellee

1  Kiley, both individually and as trustees of the Michael P. Kiley and Kellee Kiley Living Trust

2  Instrument (collectively, "Guarantors"). (*See id.* ¶¶ 4–9, 16).[1]

3       Repayment on each of the Loans was originally due within one year, but Colonial Bank

4  granted Kiley Ranch three extensions on the $20 million, $2 million, and $13 million loans and

5  one extension on the $10 million loan via separate Loan Modifications. (*Id.* ¶ 17).[2]  When the last

6  of the Loans matured on July 20, 2009, Kiley Ranch owed Colonial Bank $41,023,667.99 under

7  the Loans. (*Id.* ¶ 18).

8       On August 14, 2009, the FDIC put Colonial Bank into receivership after the State

9  Banking Department of the State of Alabama closed it. (*Id.* ¶ 21).  The FDIC transferred the

10 rights to the Loans to non-party BB&T the same day, recording an "Assignment of Security

11 Instruments, Notes and Other Loan Documents" (the "FDIC Assignment") in Washoe County.

12 (*Id.* ¶ 22).[3]

13      On September 14, 2009, counsel for BB&T sent Kiley Ranch and Guarantors demand

14 letters as to each of the Loans. (*Id.* ¶ 19).[4]  On March 2, 2010, after Kiley Ranch and Guarantors

15 refused to honor the Notes and Guaranties, BB&T executed a Notice of Default and Election to

16 Sell (the "NOD"), which it recorded in Washoe County on March 4, 2010. (*Id.* ¶¶ 24–25).[5]  On

17 July 15, 2010, the trustee under the CDOT, non-party Western Title Co., noticed a trustee's sale

18 for August 12, 2010 via a Notice of Trustee's Sale (the "NOS"). (*Id.* ¶ 26).[6]  In August 2010,

---

[1]The Loan Agreements are adduced as Exhibits 1–4 to the Amended Complaint ("AC"); the promissory notes (the "Notes") are adduced as Exhibits 5–8; the CDOT and modifications thereto are adduced as Exhibits 9–11; and the Guaranties are adduced as Exhibits 12–15.

[2]The Loan Modifications are adduced as Exhibits 16–25 to the AC.

[3]The FDIC Assignment is adduced as Exhibit 30 to the AC.

[4]The demand letters are adduced as Exhibits 26–29 of the AC.

[5]The NOD is adduced as Exhibit 31 to the AC.

[6]The NOS is adduced as Exhibit 32 to the AC.

however, before either the trustee's sale or the effective date of Nevada Revised Statutes

("NRS") section 40.459(1)(c), BB&T assigned its rights to the Notes, CDOT, Guaranties, and

other loan documents to Plaintiff Eagle SPE NV I, Inc. ("Eagle") via an Assignment of Deed of

Trust (the "BB&T Assignment"), which it recorded in Washoe County. (*See id.* ¶ 27).[7]  The

Development was eventually sold to non-party Rising Tides LLC via trustee's sale on November

8, 2011 for $9.8 million, after NRS section 40.459(1)(c) had taken effect. (*See id.* ¶ 28).[8]  The

fair market value of the Development on the date of the trustee's sale was approximately $10.5

million, (*id.* ¶ 30), leaving a  a deficiency of approximately $35,682,908.60, (*id.* ¶ 31).

    Plaintiff sued Defendants in this Court for: (1) Deficiency (against Kiley Ranch); (2)

Breach of Guaranty (against Guarantors); and (3) Breach of the Implied Covenant of Good Faith

and Fair Dealing (against Guarantors).  Defendants included with their Answer counterclaims

for: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing;

(3) Intentional Interference with Prospective Economic Advantage; and (4) Declaratory

Judgment.

    Plaintiff moved to dismiss certain counterclaims and affirmative defenses as precluded by

a previous state court action.  Plaintiff also moved to dismiss Defendants' affirmative defense

and counterclaim under NRS section 40.459(1)(c), arguing that it did not apply retroactively to

the Loans.  Defendants asked the Court to certify the latter issue to the Nevada Supreme Court or

at least stay the case until the Nevada Supreme Court ruled in two pending consolidated appeals

(*Sandpointe Apartments, LLC v. Dist. Ct.*, No. 59507 and *Nielsen v. Dist. Ct.*, No. 59823) that

were expected to determine the issue or at least inform a resolution.  The Court denied the

motions to dismiss, without prejudice, and granted the motion to stay.  The Nevada Supreme

Court later ruled on the merits in *Sandpointe* and denied the writ petition in *Nielsen*, and Plaintiff

---

[7]The BB&T Assignment is adduced as Exhibit 33 to the AC.

[8]The Trustee's Deed is adduced as Exhibit 34 to the AC.

1  filed a new motion to dismiss the counterclaim and strike the related affirmative defense under

2  NRS section 40.459(1)(c).  The Court granted that motion, ruling that the statute did not apply

3  retroactively to pre-enactment assignments, and that if it did it would violate the Contract Clause

4  in the present case.  Defendants have now moved to dismiss for lack of subject matter

5  jurisdiction.

6  **II.  LEGAL STANDARDS**

7       Federal courts are courts of limited jurisdiction, possessing only those powers granted by

8  the Constitution and statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008)

9  (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  The party

10  asserting federal jurisdiction bears the burden of overcoming the presumption against it.

11  *Kokkonen*, 511 U.S. at 377.  Federal Rule of Civil Procedure 12(b)(1) provides an affirmative

12  defense for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  Additionally, a court

13  may raise the question of subject matter jurisdiction *sua sponte* at any time during an action.

14  *United States v. Moreno–Morillo*, 334 F.3d 819, 830 (9th Cir. 2003).  Regardless of who raises

15  the issue, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must

16  dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing

17  16 J. Moore et al., *Moore's Federal Practice* § 106.66[1], pp. 106–88 to 106–89 (3d ed. 2005)).

18       Although Article III of the U.S. Constitution permits Congress to create federal

19  jurisdiction where there is minimal diversity, i.e., where any plaintiff is diverse from any

20  defendant, *State Farm Fire & Cas. Co. v. Tashire*, 386, U.S. 523, 530–31 (1967), 28 U.S.C.

21  § 1332 requires, *inter alia*, complete diversity, i.e., every plaintiff must be diverse from every

22  defendant, *see Lincoln Prop Co. v. Roche*, 546 U.S. 81, 82 (2005) (citing *Strawbridge v. Curtis*,

23  7 U.S. 267 (1806)).  For the purposes of the diversity statute, a partnership is a citizen of every

24  state of which any of its partners are citizens. *Schnabel v. Lui*, 302 F.3d 1023, 1030 n.3 (9th Cir.

25  2002).

1    **III.    ANALYSIS**

2        Defendants argue that the case must be dismissed for lack of subject matter jurisdiction

3    because: (1) the FDIC became BB&T's partner or joint venturer by entering into certain

4    agreements for BB&T to purchase the Loans and share the losses with the FDIC; (2) Eagle

5    became FDIC's partner or joint venturer when BB&T assigned its interest in the Loans to Eagle;

6    (3) the partnership or joint venture is the real party in interest in this case, not Eagle; and (4)

7    because one member of the partnership or joint venture, the FDIC, is a citizen of no state, there is

8    not complete diversity.  The Court denies the motion for several reasons.

9        First, a named plaintiff's citizenship is ignored in favor of a real party in interest only

10   when the named plaintiff is only a nominal plaintiff such as an unincorporated association.

11   *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980).  Defendants argue that Eagle and the FDIC

12   are in a partnership or a joint venture with one another, so both Eagle's and the FDIC's

13   citizenship must be considered under § 1332.  The conclusion does not follow, however, because

14   here no party has attempted to sue in the name of any unincorporated association such as the

15   alleged partnership.  Nevada law permits, but does not require, a partnership to sue in its own

16   name. *See* Nev. Rev. Stat. § 87.4331(1).  Defendants do not argue that Eagle has no interest in

17   the present case, but only that the FDIC also has an interest because of its alleged partnership or

18   joint venture with Eagle.  That argument may implicate Rule 19 if the FDIC is an indispensable

19   party, but it has nothing to do with whether Eagle is itself a real party in interest.  Eagle may sue

20   or defend with or without other putative partners joining in, and the partnership itself need not be

21   named as a party. *See Schnabel v. Lui*, 302 F.3d 1023, 1031 (9th Cir. 2002) (ruling that under

22   California law, which permitted actions against individual partners, partnerships need not be

23   joined as indispensable where they have no name, assets, or contracts as a partnership with any

24

25

1    outside parties).[9]  Nevada law likewise permits actions against individual partners, *see* Nev. Rev.

2    Stat. § 87.4331(2), and the alleged partnership here is not alleged to have any name, assets, or

3    any contracts with outside parties.

4           Second, dismissal under Rule 19 for failure to join an indispensable party—Defendants

5    do not argue under Rule 19, but the Court will address the issue, as it is clearly implicated—is

6    not appropriate under the circumstances, even assuming there is a partnership or joint venture

7    between Eagle and the FDIC.  "If a person who is required to be joined if feasible cannot be

8    joined, the court must determine whether, in equity and good conscience, the action should

9    proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).  Rule 19

---

11          [9]The Court respectfully disagrees with a ruling to the contrary cited by Defendants. *See*

12   *Eagle TX I SPE LLC v. Sharif & Munir Enters.*, No. 3:13-cv-2565, 2014 WL 696523 (N.D. Tex.
     Feb. 24, 2014).  The majority of that decision, like Defendants' motion, is devoted to analyzing

13   whether a partnership existed. *See id.*  Here, the Court assumes for the sake of argument that a
     partnership or joint venture exists between Eagle and the FDIC, although it is in fact doubtful

14   that even a joint venture exists, as the only "venture" here is the assignment of a single pre-
     existing debt to one of the putative joint venturers, with a fraction of the eventual recovery

15   constituting the consideration therefor. *See Radaker v. Scott*, 855 P.2d 1037, 1040 (Nev. 1993).
     If that were enough to form a joint venture, contingency fee agreements between attorneys and

16   their clients would qualify, but such arrangements cannot be interpreted to create joint ventures,
     because they are explicitly permissible despite the fact that business ventures between attorneys

17   and non-attorneys where part of the enterprise consists of the practice of law are impermissible.
     *Compare* Nev. R. Prof. Conduct 1.8(i), (i)(2) ("A lawyer . . . may . . . [c]ontract with a client for a

18   reasonable contingent fee in a civil case."), *with* Nev. R. Prof. Conduct 5.4(b) ("A lawyer shall
     not form a partnership with a nonlawyer if any of the activities of the partnership consist of the

19   practice of law.").  In other words, the use of a contingency fee-type agreement alone is clearly
     not considered to create a partnership-like relationship, and the assignment of the debt in the

20   present case is analogous to a contingency fee agreement—an agreement whereby one party
     permits another party to pursue the first party's claim in exchange for a share of any recovery.  In

21   any case, the Texas district court's decision, like Defendants' motion, dedicates barely a page of
     text to the critical jurisdictional analysis.  In rejecting diversity jurisdiction, the Texas district

22   court went straight from its determination that there was a partnership to the conclusion that there
     could be no diversity between a partnership having the FDIC as a partner and another state

23   citizen. *See Eagle TX I SPE LLC*, 2014 WL 696523, at *11.  The court did not adequately
     recognize that it was the Eagle entity, not the partnership, that had brought the action.  Nor did it

24   analyze whether the FDIC was an indispensable party that must be joined under Rule 19.  Nor
     did it adequately analyze whether jurisdiction could, in any case, be maintained upon the FDIC's

25   joinder.

1  provides:

2

3           A person who is subject to service of process and whose joinder will not
   deprive the court of subject-matter jurisdiction must be joined as a party if:

4

5           (A) in that person's absence, the court cannot accord complete relief among
           existing parties; or

6           (B) that person claims an interest relating to the subject of the action and is
           so situated that disposing of the action in the person's absence may:

7

8                   (i) as a practical matter impair or impede the person's ability to protect
                   the interest; or

9                   (ii) leave an existing party subject to a substantial risk of incurring
                   double, multiple, or otherwise inconsistent obligations because of the

10                  interest.

11  Fed. R. Civ. P. 19(a).  Neither subsection (A) nor (B) is satisfied as to the FDIC's absence from

12  this case.  The Court can afford complete relief between Eagle and Defendants without the

13  FDIC's involvement.  If Eagle recovers a judgment, it may be required to turn over some fraction

14  of it to the FDIC, but that does not require the FDIC's participation in the present case in order

15  for Eagle to obtain its fraction of what is allegedly owed to it.  Next, the FDIC's ability to protect

16  its interests in a recovery from Defendants will not be impaired by the present action.  On the

17  contrary, if Eagle prevails, the FDIC will recover without any effort at all.  Eagle will simply

18  remit the FDIC's share of the recovery under the agreement.  And if Eagle does not prevail, or

19  does not prevail to the extent it desires, the FDIC would not be bound by the ruling as to any of

20  its own putative claims.  Finally, there is no risk of any existing party being subjected to multiple

21  or inconsistent obligations.  That is because, according to facts no party appears to dispute, the

22  FDIC has only a contractual interest in Eagle's recovery, having assigned the Loans, CDOT, and

23  Guaranties to Eagle.  It has not retained the claims such that it might bring its own action in the

24  future.

25          Third, even assuming: (1) there were a partnership or joint venture between Eagle and the

FDIC; and (2) the FDIC were an indispensable party, the FDIC could still be joined without

destroying diversity, because when the FDIC acts in its capacity as a receiver, it is the citizenship

of the defunct bank of which the FDIC has taken receivership that matters for the purposes of

diversity, and the FDIC's presence in such a case will not defeat diversity unless the presence of

the defunct bank itself would defeat diversity. 12 U.S.C. § 1819(b)(2)(E); *RES-NV CHLV. LLC v.*

*Shull*, No. 2:11-cv-593, 2011 WL 6752547, at *10 (D. Nev. Dec. 23, 2011) (Pro, J.) (citing *FDIC*

*v. Lindquist & Vennum*, 702 F. Supp. 749, 751 (D. Minn. 1989)).  No party appears to dispute

that the defunct bank in this case, Colonial Bank, was an Alabama citizen and that no Defendant

is an Alabama citizen.

Fourth, even assuming: (1) there were a partnership or joint venture between Eagle and

the FDIC (there isn't); (2) the FDIC were therefore an indispensable party under Rule 19 (it

wouldn't be); and (3) the joinder of the FDIC would otherwise destroy diversity under § 1332 (it

wouldn't), the FDIC's joinder would create subject matter jurisdiction under § 1331. *See* 28

U.S.C. § 1331 (providing for subject matter jurisdiction wherever a case arises "under the

Constitution, laws, or treaties of the United States"); 12 U.S.C. § 1819(b)(2)(A) ("[A]ll suits of a

civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be

deemed to arise under the laws of the United States. . . .").

///

///

///

///

///

///

///

///

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 69) is DENIED.

3        IT IS SO ORDERED.

4   Dated this 12th day of September, 2014.

5

6                                            _____
                                             ROBERT C. JONES
7                                            United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25