UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| EAGLE SPE NV I, INC., | ) | |
| Plaintiff, | ) | |
| | ) | 3:12-CV-00245-RCJ-WGC |
| vs. | ) | |
| | ) | |
| KILEY RANCH COMMUNITIES et al., | ) | **ORDER** |
| Defendants. | ) | |

This case arises out of the default of four commercial loans. Pending before the Court is a Motion for Summary Judgment (ECF No. 108). For the reasons given herein, the Court grants the motion and dismisses the Counterclaim (ECF Nos. 24, 27).

**I.      FACTS AND PROCEDURAL HISTORY**

Between April 2007 and February 2008, non-party Colonial Bank gave Defendant Kiley Ranch Communities ("Kiley Ranch") four loans totaling $45 million (the "Loans") in order to build Kiley Ranch North (the "Development") in Sparks, Nevada. (*See* Am. Compl. ¶ 14, June 7, 2012, ECF No. 5). Each of the Loans was made via its own promissory note and was secured by a Common Deed of Trust (the "CDOT") against the Development. (*Id.* ¶ 15). The Loans were further secured by separate guaranties (the "Guaranties"), all of which were signed by Defendants Matthew N. Kiley, individually and as trustee of the Matthew N. Kiley Trust; Megan L. Kiley, individually and as trustee of the Megan L. Kiley Trust; L. David Kiley, as trustee of the

Matthew N. Kiley Trust and as trustee of the Megan L. Kiley Trust; and Michael and Kellee Kiley, both individually and as trustees of the Michael P. Kiley and Kellee Kiley Living Trust Instrument (collectively, "Guarantors"). (*See id.* ¶¶ 4–9, 16).[1]

Repayment on each of the Loans was originally due within one year, but Colonial Bank granted Kiley Ranch three extensions on the $20 million, $2 million, and $13 million loans and one extension on the $10 million loan via separate Loan Modifications. (*Id.* ¶ 17).[2] When the last of the Loans matured on July 20, 2009, Kiley Ranch owed Colonial Bank $41,023,667.99 under the Loans. (*Id.* ¶ 18).

On August 14, 2009, the FDIC put Colonial Bank into receivership after the State Banking Department of the State of Alabama closed it. (*Id.* ¶ 21). The FDIC transferred the rights to the Loans to non-party BB&T the same day, recording an "Assignment of Security Instruments, Notes and Other Loan Documents" (the "FDIC Assignment") in Washoe County. (*Id.* ¶ 22).[3]

On September 14, 2009, counsel for BB&T sent Kiley Ranch and Guarantors demand letters as to each of the Loans. (*Id.* ¶ 19).[4] On March 2, 2010, after Kiley Ranch and Guarantors refused to honor the Notes and Guaranties, BB&T executed a Notice of Default and Election to Sell (the "NOD"), which it recorded in Washoe County on March 4, 2010. (*Id.* ¶¶ 24–25).[5] On July 15, 2010, the trustee under the CDOT, non-party Western Title Co., noticed a trustee's sale

---

[1] The Loan Agreements are adduced as Exhibits 1–4 to the Amended Complaint ("AC"); the promissory notes (the "Notes") are adduced as Exhibits 5–8; the CDOT and modifications thereto are adduced as Exhibits 9–11; and the Guaranties are adduced as Exhibits 12–15.

[2] The Loan Modifications are adduced as Exhibits 16–25 to the AC.

[3] The FDIC Assignment is adduced as Exhibit 30 to the AC.

[4] The demand letters are adduced as Exhibits 26–29 of the AC.

[5] The NOD is adduced as Exhibit 31 to the AC.

for August 12, 2010 via a Notice of Trustee's Sale (the "NOS"). (*Id.* ¶ 26).[6] In August 2010, however, before either the trustee's sale or the effective date of Nevada Revised Statutes ("NRS") section 40.459(1)(c), BB&T assigned its rights to the Notes, CDOT, Guaranties, and other loan documents to Plaintiff Eagle SPE NV I, Inc. ("Eagle") via an Assignment of Deed of Trust (the "BB&T Assignment"), which it recorded in Washoe County. (*See id.* ¶ 27).[7] The Development was eventually sold to non-party Rising Tides LLC via trustee's sale on November 8, 2011 for $9.8 million, after NRS section 40.459(1)(c) had taken effect. (*See id.* ¶ 28).[8] The fair market value of the Development on the date of the trustee's sale was approximately $10.5 million, (*id.* ¶ 30), leaving a a deficiency of approximately $35,682,908.60, (*id.* ¶ 31).

Plaintiff sued Defendants in this Court for: (1) Deficiency (against Kiley Ranch); (2) Breach of Guaranty (against Guarantors); and (3) Breach of the Implied Covenant of Good Faith and Fair Dealing (against Guarantors). Defendants included with their Answer counterclaims for: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Intentional Interference with Prospective Economic Advantage; and (4) Declaratory Judgment.

Plaintiff moved to dismiss certain counterclaims and affirmative defenses as precluded by a previous state court action. Plaintiff also moved to dismiss Defendants' affirmative defense and counterclaim under NRS section 40.459(1)(c), arguing that it did not apply retroactively to the Loans. Defendants asked the Court to certify the latter issue to the Nevada Supreme Court or at least stay the case until the Nevada Supreme Court ruled in two pending consolidated appeals (*Sandpointe Apartments, LLC v. Dist. Ct.*, No. 59507 and *Nielsen v. Dist. Ct.*, No. 59823) that were expected to determine the issue or at least inform a resolution. The Court denied the

---

[6] The NOS is adduced as Exhibit 32 to the AC.

[7] The BB&T Assignment is adduced as Exhibit 33 to the AC.

[8] The Trustee's Deed is adduced as Exhibit 34 to the AC.

motions to dismiss, without prejudice, and granted the motion to stay. The Nevada Supreme Court later ruled on the merits in *Sandpointe* and denied the writ petition in *Nielsen*, and Plaintiff filed a new motion to dismiss the counterclaim under NRS section 40.459(1)(c) and strike the related affirmative defense under NRS section 40.459(1)(c). The Court granted that motion, ruling that the statute did not apply retroactively to pre-enactment assignments, and that if it did it would violate the Contract Clause in the present case. Defendants moved to dismiss for lack of subject matter jurisdiction, and the Court denied the motion. Plaintiff has moved for summary judgment against Defendants' remaining three counterclaims.

## II.   LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an

element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. ANALYSIS**

Plaintiff first argues that the counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional interference with prospective economic advantage ("IIPEA") should be dismissed as precluded because Kiley Ranch brought those claims against Plaintiff's predecessor-in-interest, BB&T, in state court, and the state court

entered a final judgment against Kiley Ranch on those claims. The first amended complaint in the state court case, No. CV09-02753 (Second Judicial District Court, Washoe County, Nevada) includes claims for breach of contract, contractual bad faith, accounting, and declaratory relief. (*See* First Am. Compl. in Case No. CV09-02753, ECF No. 109-1). The state court granted summary judgment on those claims. (*See* Order in Case No. CV09-02753, ECF No. 109-5). The allegations in the Counterclaim are based on the same facts as the allegations in the first amended complaint in the state court case, i.e., refusal to make further loan disbursements or to honor a "Set-Aside Agreement." (*Compare* Answer & Countercl. 5–13, ECF No. 27, *with See* First Am. Compl. in Case No. CV09-02753 at 2–8, ECF No. 109-1).

Neither the first amended complaint nor the order addresses any IIPEA claim by name; however, it is clear the issues upon which that claim is based are precluded, as well. In the Counterclaim, Defendants argue that Plaintiff's predecessor-in-interest interfered with the prospective sale of both severable water rights on the Development and the Development itself. But the state court explicitly ruled that Plaintiff's predecessor-in-interest did not act wrongfully in refusing to permit the sale of water rights on the Development, because it had the contractual discretion whether to approve or such a sale. Kiley Ranch had presented that issue as one of several bases for its breach of contract and contractual bad faith claims. The issue is therefore precluded, which makes an IIPEA claim based on the thwarted water rights sale impossible. Nor can such a claim succeed on the theory that Plaintiff's predecessor-in-interest wrongfully failed to disburse certain moneys, because the state court has already ruled that those refusals were not wrongful but were within the lender's contractual discretion.

Plaintiff has met its initial burden on summary judgment to present evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial. Defendants have responded by agreeing to the dismissal of their Counterclaims.

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 108) is GRANTED and the Counterclaim (ECF Nos. 24, 27) is DISMISSED.

IT IS SO ORDERED.

DATED this 25th day of January, 2016.

_____
ROBERT C. JONES
United States District Judge